Cooper v. Louanstein.

*Decree unanimously affirmed.*

MARGARETTA E. COOPER, appellant,

*v.*

AUGUSTUS LOUANSTEIN, respondent.

1. In 1867, appellant's grantor, Cooper, and the respondent were the owners of adjoining town lots. Cooper's lot was unimproved. On respondent's lot, and built up to the division line, stood a dwelling about eleven feet back from the street. In 1870, Cooper discovered that the eaves of respondent's house, in consequence of alterations, projected over the division line about a foot, and thereupon respondent, after negotiating, purchased, and Cooper conveyed to him, the strip one foot wide, by a deed which contained this clause: "This deed is made and accepted upon this express condition and reservation that the said William J. Cooper and his heirs or whosoever may at any time hereafter own the adjoining land of said Cooper, shall have the full right, liberty and privilege of building up to the line of the lot hereby conveyed, and of having and enjoying two windows, one on the first story and one on the second story in the side of such building as he or they may put up, looking out on said lot, *which windows shall not be hindered or obstructed in any way by said Louanstein or his heirs or assigns to any other or greater extent than such windows if now erected could be obstructed by the house of said Louanstein at present standing on his said lot.*" During the same year (1870), Cooper erected a store and dwelling extending to the street in front of his lot and to the new division line on the side, placing in that side two windows overlooking respondent's front yard. In 1880, Cooper conveyed his lot to his wife, the appellant. In 1882, the respondent began an addition to his house, extending to the front line of his lot and to the old division side line, and of a height sufficient to obstruct the view from appellant's side windows. On a bill to enjoin such obstruction—*Held,* that the above-recited stipulation in the deed did not entitle appellant to have the whole of respondent's front yard, as it existed in 1870, unobstructed by buildings for the benefit of her side windows, but only the strip of land one foot in width, conveyed by said deed.

2. A deed not executed by the grantee, but accepted by him, containing a grant of an easement in lands of the grantee, such lands not being passed to him

Cooper v. Louanstein.

by the conveyance, is not to be regarded, with respect to the grant of such ease-
ment, as the deed of the grantee. *Per Beasley, C. J.*

3. A grantor may, by a clause of reservation in his deed of conveyance, ob-
tain an easement, or a right in the nature of an easement, in other lands of the
grantee as well as in the lands conveyed. A stipulation to that effect in a
deed accepted by the grantee, if not technically the covenant of the grantee, is
nevertheless a contract in writing which cannot be varied by parol evidence,
and a court of equity will give effect to such a contract, and protect the grantor
in the enjoyment of the right so stipulated for. *Per Depue, J.*

On appeal from a decree advised by Joseph F. Randolph,
Esq., special master.

*Mr. Henry C. Pitney,* for appellant.

The learned special master was of the opinion, (1) that the
restrictive clause, by its true construction, did apply to the whole
of defendant's lot and was not confined to the one-foot strip; (2)
that the grantor *did* and the defendant did *not* so understand it
when he accepted the deed, and that consequently neither com-
plainant nor defendant was entitled to affirmative relief.

NOTE.—A covenant or stipulation inserted in a deed-poll binds the grantee,
his heirs and assigns, where such stipulation directly relates to the premises
conveyed, *Stines* v. *Dorman, 25 Ohio St. 580; Clark* v. *Martin, 49 Pa. St. 289;
Seymour* v. *McDonald, 4 Sandf. Ch. 502; Atlantic Dock Co.* v. *Leavitt, 50 Barb.
135, 54 N. Y. 35; Anonymous, 2 Abb. N. C. 56; Kimpton* v. *Walker, 9 Vt. 191;*
and also where it relates to the premises conveyed and the adjoining premises,
as a fence, *Kellogg* v. *Robinson, 6 Vt. 276; Burbank* v. *Pillsbury, 48 N. H. 475;
Harriman* v. *Park, 55 N. H. 471; Newell* v. *Hill, 2. Metc. (Mass.) 180; Bron-
son* v. *Coffin, 108. Mass. 175, 118 Id. 156; Blain* v. *Taylor, 19 Abb. Pr. 228;
Hazlett* v. *Sinclair, 76 Ind. 488; Easter* v. *Little Miami R. R. Co., 14 Ohio St.
48; Boyle* v. *Tamlyn, 6 B. & C. 329; Walsh* v. *Barton, 24 Ohio St. 28; Duffy*
v. *N. Y. & H. R. R. Co., 2 Hilt. 496;* but see *Emerson* v. *Simpson, 43 N. H.
475; Parish* v. *Whitney, 3 Gray 516;* or party-wall, *Maine* v. *Cumston, 98
Mass. 317; Burlock* v. *Peck, 2 Duer 90;* but see *Scott* v. *McMillan, 76 N. Y.
141; Bloch* v. *Isham, 28 Ind. 37.*

Unless building restrictions &c. appear to have been inserted for the benefit
of adjacent lands, they are merely personal, and do not run with the land,
*Skinner* v. *Shepard, 130 Mass. 180; Pierce* v. *Keator, 9 Hun 532, 70 N. Y. 419;
Goddard on Eas. (Bennet's ed.) 367, note; Wagner* v. *Hanna, 38 Cal. 111;
Keates* v. *Lyon, L. R. (4 Ch. App.) 218; Renals* v. *Cowlishaw, L. R. (9 Ch.
Div.) 125, (11 Ch. Div. 866); Thurston* v. *Minke, 32 Md. 487;* see *Peck* v.

I. The restrictive clause is capable of but one construction.

The windows to be inserted in Cooper's house "*looking out upon said lot*" were "*not to be hindered or obstructed in any way* by said Louanstein or his heirs or assigns *to any other or greater extent* than such windows if now erected could be *obstructed by the house of said Louanstein at present standing on his said lot.*"

There can be no mistake as to what is meant by "*the house of said Louanstein,*" and there is no dispute but that the structure in course of erection when the bill was filed, and which was enjoined by the chancellor, does obstruct that window to a greater extent than the house did. The phrase "*hinder and obstruct*" applied to a window can ordinarily mean nothing less than a cutting off or lessening the *view from* the window or the *light* and *air* coming to it. The object and use of a window are *view*, *light* and *air*. That the parties used the words *hinder and obstruct* in that sense in this conveyance was not and could not be disputed.

II. This deed must be held as binding on defendant, even at law, to the same extent as if executed by him. *Finley* v. *Simpson, 2 Zab. 311,* and the cases which have followed it.

*Conway, 119 Mass. 546 ; Herrick* v. *Marshall, 66 Me. 435 ; Badger* v. *Boardman, 16 Gray 559.*

In *Athey* v. *McHenry, 6 B. Mon. 50*, A. was the owner of a house adjoining on the north a vacant lot thirty feet wide and two hundred feet deep. The house projected slightly over the line of the vacant lot, and had a door and several windows opening thereon. M. had contracted to buy the vacant lot, and also another one beyond and adjoining it, but agreed, through his agent, that the owner of the thirty feet might sell ten feet thereof to A., next to A.'s lot, on condition, as alleged, "that it was to be forever left open and not further built upon," in order that "it should remain forever an open space *between A.'s house and the house which M. was about to build,* to afford air and light to both." The deed was executed and delivered, but contained no restrictions whatever—a fact that M. did not discover until some time afterwards. M. built his house adjoining the south line of the ten-feet strip, and A. afterwards built a coal-house on the back part of the strip, and also nailed up boards near and in front of M.'s windows on the north side of M.'s house, so as to cover them and exclude the light and air therefrom. M. filed a bill to correct A.'s deed by inserting the above-quoted stipulation, and to compel A. to remove the coal-house, and also the boards which darkened the windows, and to prevent any further erections on said strip.—*Held,* that the circumstances of the transfer of the strip, the relative positions of the parties, and their

Cooper v. Louanstein.

If the defendant had executed it, its proper construction re-
sults in a grant of an easement by defendant over his lot in
favor of complainant's lot. It is not necessary to use the word
"*grant*," although easements lie only in grant. A covenant or
agreement for the use of a way amounts to a grant of a way.
*Goddard on Eas. (Bennet's ed.) 108, and cases cited. Holmes* v.
*Seller, 3 Lev. 305; Northam* v. *Hurley, 1 E. & B. 665; D. &
S. R. Co.* v. *Walker, 2 A. & E. (N. S.) 940;* argument of Mr.
Addison, *950,* and, in reply, *948,* opinion, *967; Wickham* v.
*Hawker, 7 M. & W. 63; Pordage* v. *Cole, 1 Saund. 320; Bush*
v. *Coles, 12 Mod. 24, 1 Show. 88; 2 Coke on Lit.* § *374 p. 230'
b, 231 a; Hadson* v. *Coppard, 7 Jur. (N. S.) 11,* which was the
case of a conveyance upon condition; *Hubbel* v. *Warren, 8
Allen 173; Platt on Covenants *31 et seq.; 2 Pars. on Con.
(5th ed.) 510.*

These citations support the text of Mr. Goddard (*p. 108.*)
" An easement cannot strictly be made the subject either of
exception or reservation in a deed of conveyance of land, for it
is neither parcel of the land granted, which circumstance is
requisite to enable a thing to be excepted, nor does it issue out of

motives and acts before and after the strip was sold, could be inquired into;
and the deed was ordered to be reformed so as to contain a clause preventing
A.'s building on the strip *only as far back as the houses stood,* and requiring him
to remove the boards, but not the coal-house.

In *Woodruff* v. *Trenton Water Power Co., 2 Stock. 489,* a corporation stipu-
lated in a deed of lands to them for a raceway, that they would erect and
maintain a bridge across their raceway, and also a landing-place on the Dela-
ware river *on other lands* of the grantor, and all necessary fences, and that the
grantor might use the raceway to water his cattle and to take ice therefrom,
the premises to revert in case of breach.—*Held,* that the covenants ran with
the land and were enforceable by the heir of the grantor against the successors
of the grantees, but that equity could not compel specific performance because
the complainant could, by the terms of the deed, enforce the forfeiture of the
estate at pleasure. See *Ryan* v. *Lockhart, 1 Pug. (N. B.) 127.*

In *Cooke* v. *Chilcott, L. R. (3 Ch. Div.) 694,* a purchaser of a piece of land,
with a well or spring upon it, covenanted with the vendor, who retained land
adjoining to be disposed of for building sites, to erect a pump and reservoir,
and to supply water therefrom to all houses built *on vendor's other land.*—*Held,*
a covenant running with the land, and enforceable by the purchaser of one of
original vendor's lots against the vendee of the original purchaser. [This

the land, as it should to render it capable of being the subject of a reservation. If, therefore, an easement be incorrectly reserved to a grantor of land or excepted from the land conveyed, *the reservation or exception operates as a grant of a newly-created easement by the grantee of the land to the grantor.*" And this doctrine has the express approbation of the supreme court of this tate, in *Earle* v. *New Brunswick, 9 Vr. 47, 51, 52.*

It is undeniable that the defendant might have granted to Mr. Cooper, by express grant, the easement in question without any conveyance of land. It is also undeniable that without any conveyance of land, the two adjoining owners could have agreed that neither should build on his land beyond a certain line, or have entered into any other mutual arrangement as to the use of their several properties. *Greene* v. *Creighton, 7 R. I. 1; Wolfe* v. *Frost, 4 Sandf. Ch. 72; Tallmadge* v. *East River Bank, 2 Duer 614; Norfleet* v. *Cromwell, 64 N. C. 1, 70 N. C. 634.* That such a clause may give an easement in lands of the grantee not conveyed was distinctly ruled in *Arthur* v. *Case, 1 Paige 447.* In that case, General Schuyler owning land on one side of a river, had granted to Nichol, the owner of the land on the opposite

case was questioned in *Haywood* v. *Brunswick Build. Soc., L. R.* (*8 Q. B. D.*) *403.*]

In *Daniel* v. *Stepney, L. R.* (*9 Exch.*) *185,* a power of distress in a demise of mines over "any lands in which there shall be, for the time being, any pits or openings by or through which the coal or culm by the said deed demised shall, for the time being, be in course of working by the lessees, their executors, administrators and assigns, was held to authorize, as against the assignees of the lessees, with notice, a *distress at pits not included in the demise,* but referred to in it, and then worked by the lessees.

In *Catt* v. *Tourle, L. R.* (*4 Ch. App.*) *654,* the plaintiff sold a piece of land to a society which covenanted with him that he, his heirs and assigns, should have the exclusive right of supplying beer to any public house erected on the land, *but the plaintiff entered into no covenant to supply it.—Held,* that plaintiff could enjoin the defendant, who had purchased part of the land and erected a public house thereon, from supplying such public house with his own beer.

In *Luker* v. *Dennis, L. R.* (*7 Ch. Div.*) *227,* a brewer leased a public house to a publican, who, in the lease, covenanted, for himself, his representatives and assigns, to purchase from the lessor all the beer consumed at that public house, *and also at another public house of which the publican held a lease under another landlord.—Held,* that the latter covenant was binding, in equity, upon

side, a right to abut a dam on Schuyler's side, *reserving to himself a right to abut a dam on Nichol's side.* Nichol did not execute the deed. Chancellor Walworth (*p. 649*) says : " The right to butt dams on the lands of the grantees on the north bank of the river is not technically correct as a reservation, because it was no part of the thing granted. It must be construed in the same manner as though the deed was executed by the grantees and this was inserted as a covenant on their part."

And on appeal, *sub nom. Case* v. *Haight, 3 Wend. 632,* where the terms of the grant and the facts are set out more fully, Suther-land, J., delivering the unanimous opinion of the court says (*p. 635*) : " The reservation can have no effect as an exception. An exception is something reserved by the grantor out of that which he has before granted. It is indispensable to a good exception that the thing excepted should be part of the thing previously granted, and not of any other thing." *3 Cruise's Dig. tit. 32 ch. 3 §§ 48, 49 ; Shep. Touch. 77 ; Comyn's Dig. tit. " Fait," E 5, 6, 7, 8 ; Cro. Eliz. 6 ; Coke on Lit. 47 a, 147, a.* The deed of General Schuyler did not convey or profess to convey any part of the

an assignee of the lease of the second public house, who had notice of the covenant.

In *Biggar* v. *Allen, 15 Grant's Ch. 358,* the plaintiff claimed under a grantee to whom had been conveyed a lot bordering on a lane leading to the grantor's dwelling On this lot the original grantee had built a hotel with windows looking out on the lane, under the *verbal assurance* of the grantor that the lane should not be built upon opposite the adjacent houses.—*Held,* that plaintiff could enjoin the grantor's widow from building on the lane so as to close the windows of his hotel.

In *Rockford R. R. Co.* v. *Beckemeier, 72 Ill. 267,* the natural and proximate loss (such as inconvenience in shipping grain) to the grantor in a deed-poll, from the grantees' failure to comply with a provision in the deed which required them to erect a depot "*upon the section of land*" on which the grantor's farm was situated, was held recoverable, but not speculative damages.

In *Morse* v. *Copeland, 2 Gray 302,* in 1825, the Copelands, still owning other adjacent lands, conveyed their interest in a factory and water privilege to the Easton company, together with the right to flow all their (Copelands') lands as then flowed ; and the Easton company conveyed the same to Leach, through whom the plaintiff claims. In 1831, Leach gave the Copelands an oral license to erect a dam *on their own land* to exclude the water therefrom, which they did, and it remained until 1853. In 1831, Leach also gave the Copelands an

north shore; he could not, therefore, reserve a right to build a dam against it. *But though void as an exception, the reservation is binding upon the grantees and their assigns, and becomes operative either as an implied covenant or by way of estoppel.*" "The deed is to be construed as though the parties had mutually covenanted that each should have a right to butt a dam upon the shore of the other; and, considered in this point of view, I see no ground for contending that it was the intention of the parties that the grantor should have a greater right in the use of the water than the grantees."

This doctrine has the express approval of Chief-Justice Shaw in *Dyer* v. *Sanford, 9 Metc. 395.* That case is precisely like the one before the court, except that the reservation in favor of the windows does not contain any language importing a right to light over the land not conveyed. At *p. 404,* Chief-Justice Shaw says: "A case was cited from New York, by plaintiff's counsel, to show that a reservation may be made of something not coming out of the estate granted, but from the grantee's own estate. *Case* v. *Haight, 3 Wend. 635.* As a proper reservation or exception, we think the principle stated is correct—that it must be

oral license to dig a ditch across *his* (Leach's) lands (now owned by the plaintiffs) to drain whatever water might accumulate on their land in consequence of having erected their dam. The ditch was dug and continued by them until 1853, when the plaintiffs gave the defendants (the present owners of the Copelands' lands not conveyed to the Easton company) a written notice to discontinue the ditch and to remove the dam, and revoking the license therefor. —*Held*, that he could revoke the license as to the ditch, even after twenty years, but not as to the dam. See *Elting* v. *Clinton Mills Co., 36 Conn. 296; Williamson* v. *Yingling, 80 Ind. 379; Carr* v. *Lowry, 27 Pa. St. 257; Goddard on Ease. (Bennet's ed.) 472 et seq.; Junction R. R. Co.* v. *Sayres, 28 Ind. 318.*

In *Wooliscroft* v. *Norton, 15 Wis. 198,* the owners of a dam and several mill-sites, conveyed one of those sites to Stevens & Older, by a deed covenanting that the grantees would pay their ratable share of the expenses of keeping in repair the dam and raceway *not on their lands.*—*Held*, binding on Stevens & Older's grantees. See *Spensley* v. *Valentine, 34 Wis. 154.*

In *McLean* v. *McKay, L. R. (5 P. C.) 327,* a grantor conveyed a tract of land leaving a vacant lot belonging to the grantor between the lot on which his own house stood and the lot conveyed. The deed contained a clause that, "by the true intent which was unanimously agreed upon between the parties [the vacant lot] should never be hereafter sold, but left for the common benefit of both parties, their successors" &c.—*Held*, that the grantee's vendee could com-

Cooper v. Louanstein.

something out of the estate granted. But we have no doubt that by apt words, even in a deed-poll, *a grantor may acquire some right in the estate of the grantee.* It is not, however, strictly by way of reservation, but by way of condition or implied covenant, even though the term 'reserving' or 'reservation' is used. If a grant is made to A, reserving the performance of a duty, to wit, the payment of a sum of money to a third person, for the benefit of the grantor, an acceptance of the grant binds A to the payment of the money. *Goodwin* v. *Gilbert, 9 Mass. 510.* So where a demise is made to A, reserving a rent in money or in service, it is not strictly a reservation out of the demised premises; but the acceptance of it raises an implied obligation to pay the money. *So, we think a grant may be so made as to create a right in the grantee's land in favor of the grantor.* For instance: suppose A has close No. 2, lying between two closes, Nos. 1 and 3, of B, and A grants to B the right to lay and maintain a drain from close No. 1, across his close No. 2, thence to be continued through his own close No. 3, to its outlet; and A, in his grant to B, should

pel the guardian of the grantor's heir, who represented the deceased grantor, to remove a building erected by him on the vacant lot. Also, *Brew* v. *Van Deman, 6 Heisk. 433; Phœnix Ins. Co.* v. *Continental Ins. Co., 14 Abb. Pr. (N. S.) 266; Gay* v. *Walker, 36 Me. 54; Fuller* v. *Arms, 45 Vt. 400.*

In *Martin* v. *Drinan, 128 Mass. 515,* an agreement by the grantee in a deed-poll to keep in repair a building on *adjoining* land of the grantor, was held not to be a covenant, and not enforceable by a subsequent grantee of the adjoining land.

In *Bishop of Raphoe* v. *Hawkesworth, 1 Hud. & Br. 606,* lands were demised to the defendant by the bishop of R. on condition that if the defendant should grind grain grown on the demised premises, at any mill save the mill belonging to the bishop of R. for the time being, he should pay to the lessor and his successors 5s. for each barrel of grain so ground, as if the same had been due for rent. *The mill was not on the demised lands.—Held,* enforceable by the bishop of R.'s successor against the lessee, as rent. Also, *Dunbar* v. *Jumper, 2 Yeates 74; Wadsworth* v. *Smith, 11 Me. 278; Adams* v. *Morse, 51 Me. 497; Bartlett* v. *Peaslee, 20 N. H. 547; Morse* v. *Garner, 1 Strobh. 514.*

In *Hodge* v. *Boothby, 48 Me. 68,* a deed from A to B reserved to C "a right to cross said lot, and to take and haul away stone" &c.--*Held,* that B, by accepting his deed, was precluded from questioning C's rights in the premises. See *Wickham* v. *Hawker, 7 M. & W. 63; Ives* v. *Van Auken, 34 Barb. 566; Eysaman* v. *Eysaman, 24 Hun 430; Rexford* v. *Marquis, 7 Lans. 249; Maynard* v. *Maynard, 4 Edw. Ch. 711.*—Rep.

reserve the right to enter his drain, for the benefit of his intermediate close, with the right and privilege of having the waste water therefrom pass off freely through the grantee's close No. 3 forever. In effect, this, if accepted, would secure to the grantor a right in the grantee's land ; but we think it would ensue by way of implied grant or covenant, and not strictly as a reservation. It results from the plain terms of the contract."

*Randall* v. *Latham, 36 Conn. 48,* was decided on the same principle and is a direct authority for complainant. One Thomas, grantor of petitioner, conveyed land to the defendant, Latham, " reserving and excepting   *   *   *   the privilege of drawing the water from the ditch of said Latham's grist-mill,   *   *   *   and the said Latham and his successor are to keep a spout ten inches square   *   *   *   at the bottom of said ditch. to which the said grantor shall at all times have access for the purpose of drawing water." Both the ditch and the place of the spout *were on the land of grantee,* who did not execute the deed. The petition was to compel Latham to put in the spout. The court (*p. 52*) says : " But the deed purports to require the respondent to put in the spout upon *land not conveyed,* and the question is, whether a court of equity can compel him to do it under the circumstances of the case. That the respondent, *by· accepting the deed containing this provision, thereby agreed to perform this duty there can be no doubt.* The case of *Hinsdale* v. *Humphrey, 15 Conn. 431,* is in point. See, also, *Townsend* v *Ward, 27 Conn. 610; Felch* v. *Taylor, 13 Pick. 133; Goodwin* v. *Gilbert, 9 Mass. 510; Burnett* v. *Lynch, 5 B. & C. 589.* This duty was a part of the consideration of his deed. The respondent has received full compensation, and it is difficult to see why he is not bound to perform it."

*Hinsdale* v. *Humphrey, 15 Conn. 431,* decides that *Finley* v. *Simpson* is law in Connecticut, but that *covenant* will not lie against a party grantee who has not in fact sealed, though the grantee in such case *is* liable in some form or nature of action.

*Townsend* v. *Ward, 27 Conn. 610,* affirms the familiar doctrine of the liability of a grantee to pay a mortgage assumed by him as a part of the consideration.

*Emerson* v. *Mooney, 50 N. H. 315,* abstracted and approved in *Washb. on Ease. (3d ed.)* *22, is quite in point in favor of complainant here.

A mere parol agreement for a consideration by the defendant not to build out in front of his house, acted upon by Cooper in such a manner and to such an extent that he could not be restored to his former position, would also be binding on the defendant in equity, and it would restrain him from violating it. An executed license or agreement of this character cannot be revoked in equity. *Rerick* v. *Kern, 14 S. & R. 267; 2 Am. Lead. Cas. 733 and cases cited; Banghart* v. *Flummerfelt, 14 Vr. 28, 31, 32, 33.* It is no part of the doctrine of *Finley* v. *Simpson* that the covenant should relate to the land conveyed. That case, and some of those which have followed it in this state, were instances of mere personal covenants. *Golden* v. *Knapp, 12 Vr. 215; Sparkman* v. *Gove, 15 Vr. 252.* Besides all the cases of assumption of mortgages in our chancery. The case in hand has all the merit of the cases of assumption of mortgages as a part of the consideration, to which so much weight was attached by Chief-Justice Green at the close of his opinion in *Finley* v. *Simpson.* The covenant here in question was a part of the consideration of the conveyance.

III. Leaving out of view the defence of "*mistake,*" this is a proper case for the interference of equity, and the defence of *hard bargain, inadequacy of consideration &c.,* has no place.

1. This is not a case of specific performance. We are not asking Louanstein to execute a deed. The contract was fully executed and completed by a deed duly sealed and delivered. Nothing remained to be done. Each party was at once entitled to and in fact did enter upon the enjoyment of the fruits of the contract. The consideration on each side passed, Louanstein retained the cornice and eaves of his house undisturbed, the light and ventilation from the side windows, and also the benefit of the increased width of view from his front windows due to the removal of Cooper's building one foot further away from his front. He got the title to the foot of land. He has enjoyed all these benefits for thirteen years, and he can never restore them to

Cooper. Even if the title to the one-foot strip should be re-vested, that would not change the location of Cooper's building.

On the other hand, Cooper received the $100, and was vested with the easement provided for in the deed. Defendant is try-ing to interfere with and disturb that easement to such an extent as amounts to a destruction of it. His proposed building is a nuisance.

The case is, in equity, precisely the same as if Louanstein had made to Cooper an independent grant under his hand and seal of the easement of light and view.

Suppose such a grant had been made for an inadequate or nominal consideration. Would the court refuse to protect the easement on account of the inadequacy of the original considera-tion paid for it? Certainly not. No precedent can be found where, in the absence of fraud, any such consideration has been listened to.

The reports, as well English as American, are full of cases of this character, and many of them were cases of great hardship. In no case where the right was established has the remedy by injunction, or, if need be, abatement, been denied on any such ground. *Kerr on Inj. 352 et seq.* In most of the English cases the right has accrued by prescription, and the question has been one of degree of obstruction. *High on Inj. 859 et seq.; Washb. on Ease.* (3d ed.) *\*63 et seq ; Goddard on Ease. (Bennet's ed.) 363 et seq.; Winfield* v. *Henning, 6 C. E. Gr. 188; Kirkpatrick* v. *Peshine, 9 C. E. Gr. 206; Barnett* v. *Johnson, 2 McCart. 481; Martin* v. *Headon, L. R. (2 Eq.) 425, 434.*

2. It is the case of the erection of a nuisance for which the remedy by successive actions at law and pecuniary damages is inadequate. *Wood on Nuisances* §§ *152, 154 et seq.; Hills* v. *Miller, 3 Paige 254.*

IV. There is no such inadequacy of price shown here as to shock the conscience.

V. The defence of "*mistake*" is not made out with the degree of certainty and completeness required in such cases. It is hardly necessary to cite the numerous authorities supporting the

Cooper v. Louanstein.

rule that, when the parties have, as here, deliberately put their contract in writing and executed it, the clearest, strongest and most satisfactory evidence is required in order to materially alter that contract; and the rule hardens where the evidence relied upon is wholly unwritten. *Firmstone* v. *De Camp, 2 C. E. Gr. 317, 323; Story's Eq. Jur.* § *152 ; Waterman on Spec. Perf.* § *380 ; 2 Pom. Eq. Jur. 325* § *859 ; Stockbridge Iron Co.* v. *Hudson Iron Co., 102 Mass. 45, 49 ; Durant* v. *Bacot, 2 Mc-Cart. 411, 414.*

Again :   No evidence can satisfy the rule, nor any theory of the facts satisfy the court, which does not include and account for all the undisputed facts in the case [recapitulating the facts].

Again : The clear weight of the evidence is, that the clause, as it was actually inserted, accorded with Cooper's understanding of the contract.   The master has so found and has refused to reform the contract or to give costs against the complainant.   This case is in marked contrast with that class of cases where there has been an *omission* of a clause or a word which should have been inserted, as the word *heirs* where it was intended to convey a fee, as in *Sisson* v. *Donnelly, 7 Vr. 432, 2 Stew. Eq. 141 ;* or as the *reddendum* clause in a lease for years, so that no provision is made for the payment of any rent; or the insertion of a clause which should not have been inserted, as in *O'Neil* v. *Clark, 6 Stew. Eq. 444 ;* and *Stevens Institute* v. *Sheridan, 3 Stew. Eq. 23 ;* or the insertion of the description of a lot not intended to be conveyed instead of the one intended, as in *Potts* v. *Arnow, 4 Hal. Ch. 322 ;* or where a familiar and convenient, but, under the circumstances, ambiguous and improper descriptive word has been used, as in *Firmstone* v. *De Camp, 2 C. E. Gr. 319.*

VI. Defendant is estopped from setting up this mistake on his part, if there be one, for the simple reason that he perpetrated it himself, and he alone is responsible for it, and Cooper has acted upon it in good faith to such an extent that he and his assignee, the complainant, cannot be restored to his previous position.

Under these circumstances, the consummation or perpetration of this mistake was self-inflicted by Louanstein.   He is responsible for the conduct of his counsel.   *Dillett* v. *Kemble, 10 C. E.*

*Gr. 66; Mott* v. *Shreve, 10 C. E. Gr. 438; Voorhis* v. *Murphy, 11 C. E. Gr. 434; Hayes* v. *Stiger, 2 Stew. Eq. 196; Glen* v. *Statler, 42 Iow't 107; Duke of Beaufort* v. *Neeld, 12 Cl. & F. 248; Diman* v. *R. R. Co., 5 R. I. 130; Green* v. *R. R. Co., 1 Beas. 169, 170; Kent* v. *Manchester, 29 Barb. 595; Wooden* v. *Haviland, 18 Conn. 101.*

The matter might be summed up in this proposition : the defendant, having accepted this deed, and there being no misrepresentation as to its contents, and he having every opportunity to know them, and the grantor having acted upon it in such a way that he cannot be restored, defendant is estopped. *Waterman on Spec. Perf.* § *384; Powell* v. *Smith, L. R. (14 Eq) 88; Phillips* v. *Gallart, 62 N. Y. 256.*

The doctrine of *Pickard* v. *Sears, 6 Ad. & E. 469; Freeman* v. *Cooke, 2 W. H. & G. 663,* and the language of Blackburn, J., in *Smith* v. *Hughes, L. R. (6 Q. B.) 597, 607,* apply. *Whart. on Con. tit. "Error and Mistake"* § *196; Cornish* v. *Abington, 4 H. & N. 549, 555; 2 Pom. Eq. Jur.* §§ *802–806; Horn* v. *Cole, 51 N. H. 287, 289; Tamplin* v. *James, L. R. (15 Ch. D.) 215.*

VII. The defence set up in the amendment cannot prevail. It is (1) that, by the true construction of the deed from King to Louanstein, his title reached beyond the side of the foundation of his house and included the very foot conveyed; and (2) that he had a right to air and light for the windows on that side of the house by implied grant from King, and that he really owned all he purchased from Cooper, was acting under a misapprehension of his rights and should be relieved.

There are several answers to this part of the case. (1) The calls of the deed from King to defendant are fully satisfied, and can only be satisfied, by running along the side of the foundation of the house. (2) As to the implied grant of light and air to those windows, there is no such implication in this country. *Myers* v. *Gemmel, 10 Barb. 537; Palmer* v. *Wetmore, 2 Sandf. 316; Doyle* v. *Lord, 64 N. Y. 433, 438, 439; Keats* v. *Hugo, 115 Mass. 204, 216.* The opinion was by Gray, J. The cases are cited on pages 213 and 214, and the reasoning is on page

215. *Randal* v. *Sanderson, 111 Mass. 114; Ray* v. *Sweeney, 14 Bush 1; 29 Am. R. 388, note at p. 398, citing many cases; Morrison* v. *Marquardt, 24 Iowa 35; 7 Am. L. Reg. (N. S.). 336, elaborate opinion by Chief-Justice Dillon, citing all the cases; Mullen* v. *Stricker, 19 Ohio St. 135, 142; Haverstick* v. *Sipe, 33 Pa. St. 368, 371.* (3) Louanstein built an addition on the rear of his house with windows opening on the side, and there could be no protection for those in any implied grant. (4) It was advantageous to him to have the new building placed farther away from his front. (5) His right at least was not clear, and, if necessary, the arrangement would be sustained as a compromise. (6) There was no proof of any fraud or overbearing conduct on the part of Cooper. Louanstein is a sharp, shrewd German, perfectly able to take care of himself.

VIII. There can be no decree for reformation of the contract unless the court is satisfied by the evidence beyond a reasonable doubt, not only that Louanstein did not understand the contract as it was written, but also that Cooper, the other party, understood it in the same way as Louanstein did.

The court will not make a contract when the proof does not show a meeting of minds. If the contract has not been executed the remedy is to *rescind* and not *reform* in such a case. The authorities are all one way and very decided to that effect. *Ramsey* v. *Smith, 5 Stew. Eq. 28, and cases cited; Diman* v. *R. R. Co., 5 R. I. 130; Pollock on Con. 453, and cases cited; Mortimer* v. *Shortall, 2 Dr. & War. 363, 372; Mead* v. *Fire Ins. Co, 64 N. Y. 453, 455; Philip* v. *Gallant, 62 N. Y. 256; 2 White & T. Lead. Cas. in Eq. (4th Am. ed.) 986; Fowler* v. *Fowler, 4 De G. & J. 250, 264, 265; 2 Pom. Eq. Jur.* § *870; Townshend* v. *Stangroom, 6 Ves. 328; Sawyer* v. *Hovey, 3 Allen 331.*

IX. There was no fraud on the part of Cooper in procuring this contract.

X. It follows necessarily from the foregoing that complainant is entitled to relief. The contract cannot be reformed to correspond with the understanding of the defendant, because the

complainant did not so understand it. It cannot be rescinded or canceled in part without a total rescission or cancellation, and it cannot be totally rescinded or canceled, because Cooper or his grantee cannot be restored to his former position. This last rule obtains even in cases where the 'contract is sought to be set aside on account of fraud. *Pollock on Con. 510, 511; Kerr on Frauds (Am. ed.) 334, 335; Sheffield Nickel Co.* v. *Unwin, L. R. (2 Q. B. D.) 223.*

The remedy at law is inadequate on two grounds—(1) The injury to the complainant's property cannot be measured in damages. (2) Those damages can only be recovered in a series of actions. The remedy by perpetual injunction will put the complainant in the full enjoyment of her right, and that is what equity strives to do.

The learned master refused to give complainant affirmative relief, on the idea, as I am informed, that this was to be viewed as a suit for specific performance. I have already argued against that view, but I contend that it is not every mistake that will defeat specific performance, and that the supposed mistake here would not do it. In the *first* place, the mistake was one as to the construction of a contract, and therefore in the nature, at least, of a mistake of law. In the *second* place, the defendant is wholly responsible for it, it having been perpetrated by his own counsel. In the *third* place, the contract has been executed in good faith by the one party, and he cannot be restored to his former position. *Powell* v. *Smith, L. R. (14 Eq.) 85; Beaufort* v. *Neeld, 12 Cl. & Fin. 248; Tamplin* v. *James, L. R. (15 Ch. Div.) 215; Hawralty* v. *Warren, 3 C. E. Gr. 124; Fry on Spec. Perf. § 508; Pomeroy on Spec. Perf. § 233; Carlisle* v. *Cooper, 6 C. E. Gr. 576, 591, 592.*

I have shown, I think, conclusively, that the effect of the clause is to create an easement in favor of complainant's lot over defendant's lot; and that such an easement is as much property as the land itself. Now, a court of equity will never permit one person to take and appropriate to himself the property of another (except in the exercise of eminent domain) upon the expectation

of his being made whole in pecuniary damages. It will never give a party the privilege of purchasing a right to erect or continue a nuisance upon paying for it in damages. Hence it will always restrain even a mere trespass whenever it will result in an actual destruction or the taking without claim of right of another's property, or rather, equity considers any conduct which results in a taking or destruction of property, as something more than a mere trespass. *Johnson* v. *Vail, 1 McCart. 423 ; Watson* v. *Sutherland, 5 Wall. 74.*

Suppose we bring an action at law, and suppose the rules of law permit us to recover damages paid once for all—who shall warrant us the payment of the judgment ? But the law does not compel us to accept pecuniary damages in such cases, nor to sue for and recover damages once for all. The object of the remedy by action at law is to recover damages already suffered and to compel the defendant to abate the nuisance. *Shadwell* v. *Hutchinson (first suit), 3 Carr. & P. 615 ; S. C. (second suit) at Nisi Prius, 4 Carr. & P. 333—In banc, 2 B. & Ad. 97 ; Battishill* v. *Reed, 18 C. B. 696, 713 ; Holmes* v. *Wilson, 10 Ad. & E. 503 ; Mayne on Damages (2d Eng. ed.) 334 ; Crain* v. *Beach, 2 Barb. 120 ; Fish* v. *Folley, 6 Hill 54, 2 N. Y. 86 ; Veghte* v. *Hoagland, 1 Vr. 516 ; 1 Sutherland on Damages 198, and cases cited ; Field on Damages § 748, and cases cited.*

Another consideration : I have shown, as I think, that the result of the deed in this case was to create an easement ; and I think it was an easement of which a court of law must take notice and enforce. But if there be any doubt upon that subject —if it be doubtful whether an action on the case for nuisance or in covenant will lie—then there is so much the more reason why equity should aid us. It was held by the supreme court in *Banghart* v. *Flummerfelt, 14 Vr. 28,* that an easement cannot be created by parol of which a court of law can take notice, and the court encouraged the plaintiff to go into equity ; and so, if the non-execution of this deed by Louanstein leaves us in that predicament, we fall at once into that class of cases of which *Barnet* v. *Johnson, Winfield* v. *Henning, Kirkpatrick* v. *Peshine,*

in our court; *Hills* v. *Miller*, *Talmadge* v. *East River Bank*, *supra*, and *Parker* v. *Nightingale*, *6 Allen 341*, are examples.  See *Washb. on Ease. \*63 et seq.*; *Goddard on Ease. (Bennet's ed.) 367*  The duty of the court to interfere in such cases is fully recognized by this court in *Brewer* v. *Marshall*, *4 C. E. Gr. 537, 543*, per Beasley, Chief-Justice.

The estoppel is effectual in equity as well as at law, and must decide this case in favor of the complainant.

*Mr. Alfred Mills* and *Mr. B. Gummere*, for respondent.

The opinion of the court was delivered by

DIXON, J.

The complainant's grantor, William J. Cooper, and the defendant, were in 1870 owners of adjoining lots on Market street, in Morristown.  On the defendant's lot stood a dwelling about eleven feet back from the street.  Cooper being about to erect a building on his lot, discovered that the eaves of defendant's house projected over the division line, and thereupon an arrangement was made between him and the defendant in fulfillment of which he, for a cash consideration of $100, conveyed to the defendant in fee a strip of ground one foot wide along the dividing line, the deed therefor containing the following clause:

"This deed is made and accepted upon this express condition and reservation that the said William J. Cooper, and his heirs or whosoever may at any time hereafter own the adjoining land of said Cooper, shall have the full right, liberty and privilege of building up to the line of the lot hereby conveyed and of having and enjoying two windows, one on the first story and one on the second story in the side of such building as he or they may put up, looking out upon said lot, which windows shall not be hindered or obstructed in any way by said Louanstein or his heirs or assigns to any other or greater extent than such windows if now erected could be obstructed by the house of said Louanstein at present standing on his said lot."

Cooper then erected a brick building upon his lot, extending to the street line in front and to the newly-constituted division line on the side toward the defendant, and in that side placed a window in the second story, near the front, overlooking the de-

fendant's front yard.  In January, 1882, the defendant began the erection of an addition to his house, extending to the front of his lot and to the old division line between him and Cooper, and being of a height sufficient to obstruct the view from the window before mentioned.  The complainant's bill is filed to enjoin such obstruction.

Under the view which we have adopted in this case, no other question need be decided than that of the true meaning of the clause upon which the complainant relies for the maintenance of her suit.  She contends that by the " condition and reservation " in the deed from her grantor to the defendant, she has a right to have her window unobstructed by any erection on the defendant's lot save the building which stood there when the deed was made. This claim, if maintained, practically deprives the defendant of the use of the front part of his lot except for the purposes of a yard.  In view of the facts that in purchasing the one-foot strip, he was protecting only the eaves of his house, and that he paid in cash the full value of the land he bought, it is plain that the claim is one which *a priori* would be thought not likely to accord with the intention of the defendant.  These circumstances may legitimately be regarded as throwing light upon the language of the written instrument, for the court is called upon to put itself in the position of the parties and to avoid, if it fairly can, any interpretation of their words and acts which will lead to an unreasonable result.

Turning, then, to the language of the clause, we see that the rights which Cooper affirmatively reserved were :  1st, that of building up to the line of the lot conveyed, viz., the one-foot strip ; 2d, that of having two windows in the side of his building, looking out upon said lot ; and then was added a negative sentence as to the obstruction of these windows.  Of these affirmative reservations, the right of building up to the line of the lot conveyed and the right of having two windows in the side of his building, were such as would have belonged to Cooper without being expressly preserved, and the only important words to be found are the phrase " looking out upon said lot."  This it

is that gives character and scope to the right which the parties intended to secure. There can be no question of the meaning of this phrase; "said lot" is the one-foot strip, just before mentioned, and therefore the windows which Cooper reserved the right to have and enjoy were windows looking out upon the one-foot strip. If the entire clause of the deed stopped here, no reasonable doubt could be raised about its interpretation. It would clearly import that the strip, and the strip only, was to be kept open for the use of the windows; an examination of the remainder of the clause does not, I think, disclose any different purpose. It in effect forbids Louanstein to create any new obstruction to the windows, and permits him to maintain whatever obstruction his old building interposed. But in determining the extent of this prohibition, we are to bear in mind that the significant feature of the windows protected is that they are windows *looking out upon the one-foot strip*, and hence it is quite reasonable to conclude that this outlook constitutes the measure of the prohibition. In accord with the same notion is the permission to maintain the old obstruction, for, as the house then standing on the defendant's lot overlapped a portion of this strip, he would have been required to remove this projection, unless this permission had been added to qualify the right before reserved.

My conclusion therefore is, that by this deed the parties designed to vest in Louanstein the fee of this one-foot strip, and to reserve to Cooper and his heirs and assigns a right to the use of said strip for his two windows, except so far as such use was already impaired by the house then standing on defendant's lot.

An additional circumstance favoring this conclusion is found in the fact that the grantor in this deed denominated the retention of his right a "reservation," a sufficiently apt term, if applied to something which he might otherwise have been thought to be surrendering, a totally inapt term, if applied to something which he was then for the first seeking to acquire.

The chancellor's decree dismissing the complainant's bill should be affirmed, on the ground that the complainant is not entitled to the right which she sets up.

BEASLEY, C. J.

The question before the court does not, in my opinion, depend on the construction of a written contract, for the conveyance from Cooper to Louanstein is not regarded by me, with respect to the subject of the easement in controversy, as the deed of the latter. In point of fact, that instrument was not executed by him, and, touching the point in dispute, it is not to be attributed to him as a matter of law. As I understand the authorities, none of them lend any countenance whatever to such an attribution, and they can be made to wear such a semblance only by failing to discriminate between the facts to which such authorities properly apply and the facts involved in the present case.

The inquiry before the court relates to the grant of an easement by force of a deed not actually executed by the grantee, in lands of the grantee, and which are not, either in whole or in part, transferred by the conveyance. The case is the same as though A should convey to B a tract of land situated in the city of Trenton, and should insert in such conveyance the grant of a right of way over the lands of B, located in Princeton. The question is, by the acceptance of such a deed, is it the deed of B with respect to the transfer of the right of way? To this query I answer unhesitatingly in the negative.

And in the first place it should be noted that if the instrument in the case suggested, and in the one before the court, is to be taken as the deed of the grantee, still it is indisputable that resting on its own footing alone, it would be unenforceable against him, either at law or in equity. This is the effect of the statute of frauds, which requires the signature of the person desirous of passing such an interest in his land. So that if we were to adopt the theory which is rejected by me, we would have the anomaly presented of a deed of a party being utterly ineffectual for the purpose for which it was designed. It would be styled a grant, but nothing in point of law or of fact would pass under it. If the complainant in the present case had not set forth in his bill acts of part performance of the agreement for this easement, which he asserts is contained in this attributed deed, he would have exhibited a case without any legal or equitable basis; and to

such a case the ascription of the deed to the defendant is not a necessity; for if the agreement in question had been by parol it would have been, under the alleged facts, quite as efficacious as though it were under seal. The technical doctrine, therefore, which has in some instances the effect of attributing a deed as the act of a person who never signed or sealed it, is by no means essential or beneficial to the equitable disposition of the class of cases to which the present one belongs, nor indeed to any class of cases that can be imagined.

The principles on which the decisions rest, which ascribe a deed to a non-executing grantee, do not warrant their application to the present case. Such decisions relate to stipulations on the part of the grantee, which are connected with or relate to the land embraced in the conveyance. Covenants contained in such instruments, which have been declared to be binding, have universally been of this character. Such agreements may indeed be collateral to the conveyance, but they must relate to the premises whose title is transferred. This was the condition of things in *Finley* v. *Simpson, 2 Zab. 311,* for in that instance the covenant ascribed, as a matter of law, to the grantee, was that he would pay off the money which was secured by a mortgage on the land granted. It is, I think, very plain that if the moneys in question had not been a burthen on the land, the statement of the assumption of the debt by the non-executing grantee contained in the deed of the grantor would not have been imputed to the former as his covenant. And yet that, in effect, is what is claimed on the side of the complainant in the present case. Such a doctrine is not supported by the decision just quoted, nor by any of the authorities which form its foundation. I have examined all of those authorities, and I find that, without exception, they relate to covenants connected with the premises demised or conveyed. Not one of them indicates the doctrine that a statement of an agreement touching alien lands will be imputed to the grantee. Among such authorities the leading one is the case cited from the year-books, *38 Edw. III. c. 8, 9.* The facts involved were these: a demise was made to two lessees, only one of whom executed the counterpart of the lease, but both went into posses-

session. The lease contained a covenant, on the part of the lessees, to pay £20 if certain conditions were not complied with. The court decided that the instrument was the deed of both lessees. But the conditions referred to all related to the land demised, and consequently such judgment was a proper basis for the decision in *Finley* v. *Simpson,* but will afford no basis for the decision of the present case. Neither Sir Edward Coke nor Chief-Baron Comyns nor any other legal writer intimates any opinion that the technical rule in question can be carried any further than it was in this case from the year-books. In *Sheppard's Touchstone vol. 1 p. 177,* the law on this head is stated with exactness. This learned writer says: "If a feoffment or a lease be made to two, or to a man and his wife, and there are divers covenants in the deed to be performed on the part of the lessees, and one of them doth not seal, or the wife doth or doth not seal during coverture, and he or she that doth not seal doth notwithstanding accept of the estate and occupy the lands conveyed or demised; in these cases, as *touching all inherent covenants,* as for payment of rent and the accessories thereof, or clauses of distress, or re-entry, *nomine pœnœ,* reparations *and the like,* they are bound by these covenants as if they did seal the deed." Both this distinguished author and Lord Coke expressly declare that the root of this legal rule is in the maxim: *Qui sentit commodum sentire debet et onus, et transit terra cum onere*—that is, that he who takes the land conveyed or demised must take it with the burthen upon it. It is obvious that this maxim cannot be applied to the case before the court. If covenants relating to alien lands are to be construed as the agreements by specialty of a non-executing grantee, it would follow that any other stipulation which the grantor might insert in his conveyance would be so regarded. Thus the grantee might in such form be made to convey his lands, or to sell a ship or a stock of goods. It seems to me that a rule of law of this kind would be fraught with mischief. If a grantor wishes to obtain a conveyance of lands from his grantee, or wishes to obtain an easement in such lands, it is the reasonable and safe course to require him to obtain a deed to that end, executed by such

20

grantee.    The law gives a peculiar efficacy to deeds, on the ground that the act of signing, sealing and delivering such instruments denotes caution and deliberation in the person executing them.    It would be an unwise policy to introduce into the law, instruments having such efficacy which have not been, in their formation, attended with such formalities.

My footing, therefore, in the present matter is this : I do not regard the clause relating to the easement in question, as contained in a deed of the defendant, Louanstein ; but I regard such statement, the deed being accepted by Louanstein, as a circumstance of evidence, more or less strong, as the case may be, tending to show a parol agreement for such easement.   If this were the deed of the defendant it could not be contradicted or altered by extraneous evidence ; it would have to speak for itself, and all that this court could do would be to enforce its terms.    This is the force that I refuse to give to it, looking upon it as simply evidence of a character susceptible of explanation or alteration by the other facts in the case.    If there were no other proof on this subject except the statement of the bargain in the grantor's deed, I should treat it as was done in the case cited from the New York reports, as full proof of an agreement in the terms of such statement, and, as the transaction has in part been executed, should favor its enforcement.    But the matter does not stand on such statement alone ; there is other testimony on the subject that has satisfied me that the easement, as claimed by the complainant, was not a part of the bargain.    The defendant did not agree to grant the easement to the extent set up in the complainant's bill.    Taking this view of the testimony, I will vote, on that ground, to affirm this decree.

DEPUE, J. (*dissenting*).

I concur in the view of the special master that the defendant has made no case under his cross-bill for the reformation of the deed.    But I cannot approve of the decree he advised dismissing the complainant's bill.

The doctrine of the common law was, and the law of this state is, that, if the grantee in an indenture of bargain and sale,

purporting to be *inter partes,* accept the deed and the estate thereby conveyed, the deed becomes *ipso facto* his deed as well as the deed of the grantor, though it be not executed and delivered by him. The engagements and undertakings expressed in the deed to be performed by the grantee are regarded as covenants on his part, and on a breach he may be sued at law in an action of covenant, as for a covenant broken. The common law authorities for this principle are cited in the brief of Mr. (now Justice) Bradley, in *Finley* v. *Simpson, 2 Zab. 311,* and the principle was adopted by the court in its decision.

This doctrine is not restricted to such stipulations as are in the nature of covenants real and annexed to the inheritance, or relating to the mode in which the premises granted shall be used or enjoyed. On the contrary, the precedents of the judicial enforcements of this principle are mainly those in which actions have been brought on such covenants where they related to matters collateral to the grant, which were not in any sense qualifications of or restrictions upon the estate granted or the mode in which the premises should be used or enjoyed. Chief-Baron Comyn says: "If a lease be to A and B by indenture, and A seals a counterpart, and B agrees to the lease but does not seal, yet B may be charged for a covenant broken, though the covenant be collateral and not annexed to the land." *Com. Dig. tit. "Covenant" A 1.* "An indenture of lease is engrossed between A of the one part, and D and R of the other part, which purporteth to be a demise for years by A to D and R. A sealeth and delivereth the indenture to D, and D sealeth a counterpart to A, but R did not seal or deliver it. By the same indenture it is mentioned that D and R did grant to be bound to the plaintiff in £20, in case certain conditions comprised in the indenture were not performed. For this £20 A brought action against D only. The defendant pleaded that the demise by indenture was made to D and R, and the non-joinder of R. The plaintiff replied that R did never seal and deliver the indenture, and so his writ was good against D *sole.* The counsel of the plaintiff took a diversity between a rent reserved which is parcel of the lease, and the land charged therewith, and a sum in gross, as here the

£20 is; for as to the rent they agreed that by the agreement of R to the lease, he was bound to pay it, but for the £20, that is a sum in gross, and collateral to the lease, and not annexed to the land, and groweth due only by the deed, and therefore R said he was not chargeable therewith, for that he had not sealed and delivered the deed. But inasmuch as he had agreed to the lease, which was made by indenture, he was chargeable by the indenture for the same sum in gross; and for that R was not named in the writ, it was adjudged that the writ did abate." *Coke on Lit. 231 a.* A contract by the grantee to assume and pay a mortgage made by the grantor upon the premises is a collateral contract; and yet it has repeatedly been held by the courts of this state, that the deed, though executed by the grantor only, is the deed of the grantee also, and that the latter may be sued in an action of covenant, upon the contract of assumption contained in the deed. *Finley* v. *Simpson, supra; Golden* v. *Knapp, 12 Vr. 215; Sparkman* v. *Gove, 15 Id. 252.*

Nor is there anything in the nature of an easement that for technical reasons would restrain the force of a covenant by the grantee to the premises granted. An easement, strictly speaking, cannot be made the subject of an exception or reservation, for it is neither parcel of the land granted nor does it issue out of the land. A clause in a deed of conveyance reserving an easement operates as a grant of a newly created easement. *Godd. on Ease. 108.* The reservation is considered, as was said by Lord Westbury, precisely as if it were a counter-grant by the grantee. *Goold* v. *G. W. Deep Coal Co., 2 DeG. J. & S. 600.* It would undoubtedly have been competent for Louanstein, by a counter-grant, to grant to Cooper and those who succeeded to his estate, an easement of light as a servitude upon his adjoining lands, as well as in the premises granted; and if the clause in question in this deed be treated as a clause of reservation merely, it would, in its strictest sense, be effective to create an easement in the premises granted, and the superadded covenant would be operative to prohibit such acts of interference with the easement granted as he covenanted to abstain from.

But if there should be any difficulty in giving effect to

Louanstein's covenant in a court of law, arising out of the notion that at law the covenant can be effective only to create an easement in the lands granted, no such difficulty exists in a court of equity. In equity it is clear that a stipulation of this kind in a deed accepted by a grantee will create an easement or a right in the nature of an easement in other lands of the grantee not comprised in the grant. In *Case* v. *Haight, 3 Wend. 632 ; S. C., 1 Paige 447*, Schuyler owned the south side of the lower falls in the outlet of Lake George, and also the land under the bed of the stream. He made a grant to Deals & Nichols of the bed of the stream. The deed contained a reservation of the right to Schuyler, his heirs and assigns, to abut any dam or dams on both shores of the river. The grantees were the owners of the lands on the north shore. The question arose as to the effect of this reservation. Sutherland, J., delivering the opinion of the court of appeals, said : " The reservation can have no effect as an exception. * * * * * The deed of Schuyler did not convey or profess to convey any part of the north shore; he could not, therefore, reserve a right to build a dam against it. But, though void as an exception, the reservation is binding upon the grantees and their assigns, and becomes operative either as an implied covenant or by way of estoppel; the deed is to be construed as though the parties had mutually covenanted that each should have a right to abut a dam upon the shore of the other." This case was approved by Chief-Justice Shaw, as founded upon the indubitable principle that a grantor, by a reservation in his deed, may acquire a right in other lands of the grantee not granted to him by the deed ; and the learned chief-justice gives illustrations of such grants, resulting, as he expresses it, " from the plain terms of the contract." *Dyer* v. *Sandford, 9 Metc. 395–404.* In *Randall* v. *Latham, 36 Conn. 48*, on a bill for specific performance of an agreement with regard to water from the respondent's raceway, the complainant claimed a right to water from the raceway under one Thomas. Thomas and the respondent, Latham, were respectively the owners of mills on the same stream. Thomas conveyed to Latham a tract of thirty acres adjoining the mill of the latter. The

deed contained a reservation that the grantor should have the privilege of drawing water from the ditch of Latham's grist-mill, and that Latham and his successors should keep a spout ten inches square in the inside at the bottom of the ditch, to which the grantor should at all times have access for the purpose of drawing water. The ditch was never owned by Thomas, and he had no interest in it beyond that acquired by this provision in his deed to Latham. The court sustained the complainant's bill, saying: "The deed purports to require the respondent to put in the spout upon land not conveyed, and the question is whether a court of·equity will compel him to do it under the circumstances of the case. That the respondent, by accepting the deed containing the provision, thereby agreed to perform this duty, there can be no doubt. ·This duty was part of the consideration of his deed. The respondent has received full compensation, and it is difficult to see why he is not bound to perform it."

But if we should yield to the reasoning that this stipulation, on technical grounds, is not the covenant of Louanstein because·he did not sign and seal the deed, the complainant would nevertheless be entitled to the benefit of its provisions in a court of equity. A contract, the terms of which are reduced to writing, though signed by one party only, if delivered and accepted ·by the other party, becomes the written contract of both parties. For instance, the conditions of insurance contained in a policy signed by the insurer only, become, by the acceptance of the policy, contracts of warranty on the part of the insured. A carrier's bill of lading, or his ticket issued to a passenger, becomes, by the acceptance, a contract in writing between the carrier and the consignor or passenger, and neither party can vary the terms of such a contract by parol evidence. *Long* v. *R. R. Co.,* *50 N. Y. 76; Burke* v. *S. E. R. R. Co., L. R. (5 C. P. D.) 1; Harris* v. *G. W. R. R. Co., L. R. (1 Q. B. D.) 515; Watkins* v. *Rymill, L. R. (10 Q. B. D.) 178; 2 Whart. Ev. § 921.*

All the authorities agree that the grantee in a deed which has been accepted by him, is bound by the stipulations on his part contained therein. The only controversy has been with respect to the form of action or procedure by which his liability shall

be enforced.   If an action of covenant will not lie for a breach, for the reason that his contract is not technically a covenant, he is bound in equity by his agreement contained in the deed.   The deed is evidence that he made the agreement contained in it, and a court of equity will restrain him from doing what he agreed not to do.   *Atlantic Dock Co.* v. *Leavitt, 54 N. Y. 35–42.*

In any view of the nature of this stipulation—whether it be considered as a covenant or only as a contract in writing—the question is simply one of construction.   In putting a construction upon the agreement in question, there is no place for the application of the maxim *verba chartarum fortius accipiuntur contra proferentem ;* for in indentures the words are the words of all the parties, and the intention is to be regarded.   *1 Leon. 318 ; 2 Id. 47, 192 ; Lord Say and Seal's Case, 10 Mod. 40, 48.*   And the maxim quoted is the last to be resorted to, and is never to be relied upon but when all other rules of exposition fail, and if any other come in place, this giveth place.   *Bac. Max. Reg. 3 pl. 14.*

Before this deed was executed the parties were owners of adjoining lots fronting on Market street—Cooper's lot having a frontage of fifty feet, Louanstein's a frontage of twenty-six feet. On Louanstein's lot there was an old house standing back eleven feet from the line of the street.   In 1868, Louanstein altered and repaired his house.   In the spring of 1870, Cooper made preparations to build on his lot, and it was then ascertained that the division line between the two lots "cut into the weatherboards on a portion of the southwesterly side of Louanstein's house about a half or three-quarters of an inch," and that the cornice projected over the line sixteen or seventeen inches.   To settle this difficulty the deed in question was made, conveying to Louanstein one foot of land.   In this deed Louanstein agreed that Cooper and his heirs and assigns should have the—

"Full right, liberty and privilege of building up to the line of the lot hereby conveyed, and of having and enjoying two windows, one on the first story and one on the second story, in the side of such building as he or they may put up, looking out on said lot."

Cooper then changed the plan of his proposed building, and

erected on his lot a brick building flush up to the new division line, and placed in it two windows on the side towards Louanstein's lot. In constructing this building the cornice of Louanstein's house was sawed off and reduced to one foot in width, and flushed up against Cooper's building. Louanstein now proposes to extend his house on the line of his original lot, out to the line of the street, which will bring his house directly in front of Cooper's windows. His right to do so under the stipulation in the deed is the subject-matter of this suit.

It will be observed that it is admitted that the reservation in the deed creates an easement of light and air. The words already quoted are of such import as to be decisive on that subject. The question, then, is, how far that easement so created is protected from hindrance or obstruction by the contract of Louenstein. In the concluding portion of this stipulation he covenants that,

"Which windows shall not be hindered or obstructed in any way by said Louanstein, or his heirs or assigns, to any other or greater extent than such windows, if now erected, could be obstructed by the house of said Louanstein, at present standing on his said lot."

The contention of the defendant is that this stipulation only prohibits the erection of any building on the one foot conveyed, and consequently he proposes to extend his house on the line of his original lot to the street, leaving a space of only one foot between his proposed building and Cooper's windows, practically cutting off light and air from the windows, and leaving a space not sufficient for the swinging of shutters. If a stipulation of such an import had been in the contemplation of the parties, it would have occurred to any scrivener, much more to a lawyer (and this deed was prepared by a lawyer), simply to interdict the erection of any building on the strip conveyed. Instead of this obvious method of expressing the understanding of the parties, the draughtsman of the deed adopted the sweeping language that the said windows shall not be hindered or obstructed in any way; and, as if to remove all doubt, he adds,

"To any other or greater extent than such windows, if now erected, could be obstructed by the house of said Louanstein, at present standing on his said lot."

To support his contention the defendant relies on two grounds —First, that the reservation cannot be construed, or rather be operative to create an easement or a right in the grantor in any other land of the grantee than that which is the subject of the conveyance. This contention, as I have shown, is discredited by judicial decisions, and, I believe, is wholly without approval or countenance in any judicial opinion. The other ground is an interpretation of this stipulation constructed upon the words " on said lot," and " standing on his said lot." It is argued that these are words of reference to some lot antecedently mentioned, and therefore must restrict the covenant to the land conveyed.

But on referring to the description of the premises in the deed, it will be found that in the first course there is a call for a boundary " along the line of the lot conveyed by King and wife to said Louanstein," which is Louanstein's original lot; and the house is referred to as " the house now owned and occupied by said Louanstein." The first time the words " said lot " are used in the expression " windows * * * looking out on said lot," they were merely descriptive of the location of windows to be placed in a house to be erected. And the words " on his said lot," as afterwards used, would naturally be referable to the lot Louanstein previously owned rather than to the premises conveyed; for it is not usual in a deed which takes effect and vests property from delivery to speak of the premises conveyed as being the property of the grantee. Especially is this construction more probable and rational where the reference is to a house all of which except from a half to three-quarters of an inch of the thickness of its weather-boards, and its projecting cornice, is on a lot in the ownership of the grantee, and the house is described as " at present standing on his said lot," and is previously mentioned in the deed as a house owned and occupied by the grantee.

But these grammatical criticisms, however well founded they may be, are in my judgment of little avail as against the language of this covenant taken as a whole, and the purpose the

parties had in view in inserting the covenant in the deed. The parties were contracting for an easement of light and air—an easement which could not be enjoyed except by an open space reasonably sufficient for the admission of light and air. Such an easement is hindered and obstructed in a legal sense by any impediment to the passage of light and air which interferes with the reasonable enjoyment of the privilege. The complainant, by the reservation in his deed, obtained a right of having and enjoying two windows in his building on that side, and he required and obtained, in addition thereto, a covenant that his windows—which are the mere instruments by which his easement of light and air is enjoyed—should not be obstructed to any other or greater extent than such windows would be obstructed by the house then standing on the defendant's lot. The proposed extension of the defendant's house would make this easement, as an easement of light and air, practically useless, and it seems to me to be a forced construction of this covenant, to impute to it a meaning that the parties contemplated a useless privilege when they contracted that the right reserved should be as free and unobstructed as it would be with the defendant's house as it then stood.

It will also be observed that any other construction than that I adopt will expunge the whole of the covenant with respect to hindrance and obstruction from the deed; for the complainant, under the grant in the introductory part of the stipulation " of the full right, liberty and privilege   *   *   *   of having and enjoying two windows   *   *   *   in the side of his building, looking out on said lot," will be entitled to all the rights now proposed to be accorded to him, and the subsequent covenant against hindrance and obstruction which is annexed to the grant is made nugatory—rejected, and practically expunged from the deed.

I think, also, that the complainant is entitled to have his right protected by a decree of a court of equity instead of being remitted to his action at law as the master advises; for, when a right to light is claimed as a special right created by a covenant, a court of equity will protect it by injunction, under circum-

stances where the court would withhold such protection from an ordinary easement. *Leech* v. *Schweder, L. R. (9 Ch. App.) 463.*

I think the decree should be reversed, and a decree made in accordance with the prayer of the bill.

For affirmance — THE CHIEF-JUSTICE, DIXON, KNAPP, MAGIE, PARKER, SCUDDER, VAN SYCKEL, CLEMENT, COLE, GREEN, KIRK—11.

For reversal—DEPUE, REED, PATERSON, WHITAKER—4.