33 N.J. Super. 412 (1954)
110 A.2d 335
WILOMAY HOLDING CO., A CORPORATION, PLAINTIFF,
v.
PENINSULA LAND COMPANY, A CORPORATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 21, 1954.
Mr. Isadore Glauberman, attorney for plaintiff.
Messrs. Matthews & James, attorneys for defendant (By Mr. John A. Wyckoff).
*413 DREWEN, J.C.C. (temporarily assigned).
This suit is brought to quiet title to a parcel of land comprising a small portion of an approximately 22-acre peninsula that juts into the waters of Lake Hopatcong. The peninsula is commonly referred to as an island, "Callaghan's Island." The defendant is an aggregation of persons owning bungalows and camp sites within or near the disputed area. It is admitted for present purposes that the plaintiff corporation has record title to the whole of the peninsula, with the exception of the portion now in question. Plaintiff acquired its title by a deed of October 30, 1951, which purports to be a conveyance to plaintiff by persons known and referred to as the Callaghan heirs, of all the lands comprising the peninsula, "excepting therefrom, however, all of the lands, rights and privileges described in and granted by a certain deed from Daniel Callaghan and Rose A. Callaghan, his wife, to the Consumers Coal & Ice Company, dated and recorded September 3, 1915 in the office of the Clerk of Morris County in Book H-23 of Deeds, at page 1." The land thus excepted is what is known in this case as "the ten foot strip," the same being a perimeter of the stated width running along much of the peninsula, and having been acquired by Consumers Coal & Ice Company to provide space for the heaping of snow removed in the harvesting of lake ice. Daniel Callaghan, whose 1915 deed to Consumers constitutes the exception stated, derived his title from one Aaron Peck, by deed to the said Daniel Callaghan made and recorded in 1884. While the Aaron Peck deed is in evidence, proof of the metes and bounds of what it conveys is not, for the reason that there is nothing in the case to carry out the deed's description by explaining the effect of its numerous references to other deeds.
In the pretrial order the disputed area is set down as that portion of the peninsula "which lies north of the record title of its (plaintiff's) predecessors in title and south of the southerly line of exception contained in its deed of conveyance from the Callaghans, namely the land described in the deed" of the Callaghans to Consumers of September 3, 1915, aforementioned. *414 This exception, plaintiff admits, consists of the ten-foot strip already mentioned and running the entire length of the northerly perimeter of the island and along its northwest side. Immediately south of the ten-foot strip is the area in dispute, the southerly boundary of which is the title line known as the X-Y or Snyder line, this being a straight line running southwesterly from a point near the northwest corner of the peninsula to its intersection with the west shore thereof at a northerly part. Roughly, therefore, the disputed area is triangular; it is referred to as the "gore." Its total content is about an acre. It is to be taken from the testimony of defendant's witness Scherzer, a land surveyor, that the distances from the X-Y line to the ten-foot strip are "to the best" of the witness' scaling, at the widest point, 120 feet; the closest point about two feet or three feet; and that in the northeast corner there is a strip of approximately 35 feet in width.
It is important to note first that while plaintiff's 1951 deed from the Callaghan heirs purports to include the gore in what it conveys, it is in that deed that the gore makes its first and only appearance in plaintiff's title, which means that the purported vesting in plaintiff of title to the gore is unsupported by any anterior muniment or record. It is equally important to note, on the other hand, that defendant's record title to the gore is clear and definite. Defendant relies on the deed of Consumers Coal & Ice Company made in April, 1953, to one Jennie Kuiken and the deed of May, 1953, of said Kuiken to defendant, Consumers' title to the piece being supported by deed of Bernard Brady and wife to the Consumers Coal & Ice Company, dated July 29, 1910 and recorded September 2, 1914, in book S-22 of deeds for Morris County. The Bernard Brady title to both the gore and the strip derives directly from a deed conveying both tracts, made by Phillip G. Callaghan to the said Brady and dated January 12, 1909, these tracts having been purchased by the said Phillip G. Callaghan from the sheriff of Morris County in 1906. As already noted, on July 29, 1910 Bernard Brady and wife conveyed the gore to Consumers Coal & Ice Company, *415 whose deed defendant holds. (Originally the defendant in the present case was the said Consumers Coal & Ice Company, the instant defendant being later substituted.)
Thus confronted by the record, plaintiff does not rely on documentary title in itself but on title by adverse possession, claiming that it has had unmolested possession of the lands within the gore, by itself and through its predecessors in title, continuously since the Aaron Peck deed of 1884. It is my judgment that title by adverse possession is manifestly not established by the proofs, whether they be considered in relation to the 20, the 30 or the 60 year provision of the statute. (N.J.S. 2A:14-30; N.J.S. 2A:14-6 and/or 7).
As noted, the content of the whole peninsula is approximately 22 acres. Until about 1920 some simple farming had been done there, during the summer months. From then on, however, it appears that very little farming was done and that there followed about that time the development and increase of bungalows and similar installations for summer use. It appears also that most of the persons erecting and maintaining the bungalows secured permission therefor from one Tierney, paying an annual rental to him for the land occupied. Tierney (now deceased) appears to have acted in these matters as agent for the Callaghan family, but that is matter of conjecture really, for it is not shown with any certainty whether Tierney was acting on behalf of Daniel Callaghan, then life-tenant, or as executor of the estate, or manager of the property, or opportunely for himself, or otherwise. So far as this decision is concerned, however, the point is of no consequence, as will appear.
A number of witnesses testified for defendant to having rented bungalows on the "island." Some had rented from Tierney, who at the time apparently represented the Callaghan interests; some had rented from the Callaghans, but all of these rentals were outside the gore. Plaintiff failed to prove a single instance of a rental within the gore concerning which rent had been paid to the Callaghans or to Tierney at any time. The only rentals within the gore were rentals *416 made to defendant's witnesses Capelli and Temple, but neither of these persons had paid rent, directly or indirectly, to any of plaintiff's predecessors in title. The payments they made were to plaintiff itself, pursuant to order of this court in the case of Boyan, et al. v. Wilomay Holding Co., to be discussed later. These payments under court order are of no present significance, as will be shown. Plaintiff had every opportunity to show rental payments to its predecessors in title but, as stated, failed to do so, though ostensibly it did undertake to prove adverse possession, partly at least, by virtue of rental payments claimed to have been so made. We are, of course, not concerned with rent for locations outside the gore; and as the proof stands it is strongly contrary to the theory and contention of plaintiffs.
The record title of Consumers Coal & Ice Company to the gore property is not seriously attacked. And as stated it is from Consumers that defendant's title comes. One of the defendant's witnesses was Jerome Brady, a nephew of the aforementioned Bernard, and who had participated in the Lake Hopatcong activities of the Consumers Coal & Ice Company. In one instance at least, that of defense witness Temple, it is definitely shown that permission for the erection of a bungalow or summer tent within the gore was given by the same Jerome Brady, who also testified to having given to the aforementioned Tierney direct permission to build on Consumers' property. Says Brady, "A guy would come to me and say `Can I put up a tent?' I would say `Go ahead.'" And being examined from depositions previously given by him, Brady was asked "Do you remember telling Mr. Tierney in the '20's `All right, go ahead. You are not paying me anything but don't forget the property belongs to Consumers Coal & Ice Co.'? A. I think I recall. Q. Yes, that was in the '20's. You knew all the time that the property was yours, didn't you? A. That is correct." And from the same witness, "Many times Tierney would say I can't rent any more land out because I am coming over on Brady. Then he would come to me and I would say `Oh, go ahead.'" The aforementioned Temple confirms the testimony of *417 Jerome Brady with regard to permission for the installation of Temple's tent within the gore. And he adds that no one had ever sought to remove him.
James N. Wright, a witness for defendant, qualified as an expert in the searching of land titles. He searched the property here in question and gives it as his opinion that defendant holds record title to it. No objection was raised to his testimony and he was not cross-examined. See Byard v. Hoelscher, 112 Conn. 5, 151 A. 351 (1930). Cf. Draper Corporation v. Pitman, 97 N.H. 1, 79 A.2d 833 (N.H. 1951).
Now what of plaintiff's claim of adverse possession by farm use? As for the quality of plaintiff's proof of such use there is simply nothing in it to rebut the idea that permission for it had either been actually asked and obtained, or that permission was presumed on plaintiff's part. The possession, in a word, was not adverse; it was not hostile. It so happens, moreover, that the circumstances governing plaintiff on the one hand and the record owner on the other were entirely favorable to the complete accommodation of both in their respective use and occupation of the land. The Consumers Coal & Ice Company, record owner, was interested in the parcel, from all that can be inferred, solely as an adjunct to its business of cutting ice on the lake. Certainly it had no interest in its use contrary to the occasional use that plaintiff made of it for planting and pasturage. Nothing, in circumstances like these, is sufficient to work a divesting of record title by adverse possession. The very opposite of hostility is shown in the possession and use of the land by plaintiff, so that even the theory by which it would divest the record owner is contrived and artificial.
Hostility is an indispensable element of adverse possession. But there are other equally essential prerequisites that remain unproved. "A concordant procession of judicial authorities has over the years declared that a user to be recognized in the law as adverse must be shown to have been hostile, exclusive, continuous, uninterrupted, visible, and notorious." Predham v. Holfester, 32 N.J. Super. 419 at *418 page 423 (App. Div. 1954). In a field where the decisions are numerous, the Predham case can be cited as a definitive and very recent authority. The concurring opinion in that case (at page 429) is also noteworthy respecting the absence of reasonably obvious boundaries or markers. Here we have a piece of land jutting into a lake. Except that the timber growth has partly vanished and some tillage has ensued,  and allowing for the summer vacationists  it can fairly be said that the land is in a virginal state. Boundaries are not fixed or marked or otherwise visible, and respecting the boundaries that immediately concern us it is apparent that none have been definitely established. It is not at all remarkable, therefore, that cattle should have grazed freely over the acreage, nor indeed that there were those who worked upon the soil to make it productive in the summertime. During the seasons of such use the record owner had no interest in a contrary or different use that would have caused it to exclude the plaintiff from entering for such purpose as it did. In Content v. Dalton, 122 N.J. Eq. 425 (E. & A. 1937), it is said, at page 433: "* * * possession which is permissive and consistent with the title of another should not silently bar that title."
Reference has been made to an order of this court for the payment of rent to plaintiff by certain of the bungalow owners. Such an order was made in the aforementioned suit brought by one Boyan and others against the present plaintiff, the decision of which on appeal is unreported. Statement of the result follows. The plaintiffs there sought to have the court determine the ownership of bungalows located in or near the peninsula, it being alleged that some of them were no more than partly on defendant's lands and others not at all. A consent judgment was entered granting plaintiffs possession of their bungalows, conditioned upon the bungalows being removed from defendant's premises without destruction of trees, and bonds being required to save the defendant harmless in the event of damage. Also as to certain of the plaintiffs in the case there was a provision for payment of rent. An order to show cause was later issued *419 based upon a claimed breach of the consent judgment terms. After hearing a further order was entered from which plaintiffs appealed. The Boyan case, supra, is the result. The Appellate Division reversed, holding that this court had so decided the dispute as wrongly to have presupposed title in Wilomay, to the exclusion of Callaghan Island Land Co. (another aggregate of bungalow owners), and the Consumers Coal & Ice Company, to part of the peninsula. The opinion is also of interest as bearing on the general uncertainty of title contingent upon location of the X-Y line. What should be stated categorically is that the Boyan decision in no way bears on the merits of the issue before us.
It is also in order to observe that the testimony taken at the trial discloses in a basic way that bungalow owners in divers, if not competing, groups are and have been striving to achieve the repose of unquestioned ownership of the parcels they claim. The present plaintiff's part in all this is an effort to establish its title to the whole peninsula, excluding all others. The evidence embraces ample testimony that shows meetings and conferences at which title questions that are here involved were discussed with counsel, and, on one occasion at least, with a surveyor and title expert present. These meetings were attended by persons who are identified with the parties to this litigation, including the witness Buesing, president of plaintiff corporation. These proofs provide, in my opinion, ample ground for the inference, which the court draws, that plaintiff's claim of adverse possession is based not upon a consciously created adverse situation but rather upon what can better be described as the searching opportunisms of hindsight.
The complaint is dismissed.