WILOMAY HOLDING CO., A CORPORATION, PLAINTIFF, v. PENINSULA LAND COMPANY, A CORPORATION, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided February 9, 1955.

Mr. *Isadore Glauberman*, attorney for plaintiff.

Messrs. *Matthews & James* (*Mr. John A. Wyckoff* appearing), attorneys for defendant.

DREWEN, J. C. C. (temporarily assigned). In the opinion heretofore filed, to which this is a supplement, one of the points on which plaintiff relies is left unmentioned. This was not an oversight, but resulted from the fact that in the court's opinion the particular point referred to is so manifestly without merit as not to call for discussion. However, in the course of the argument recently had respecting the form of judgment to be entered, the idea arose in the court's mind that notwithstanding its view as stated, the interests of a right disposition of the cause would be better served, in the event of an appeal, were the reviewing tribunal not required to deal with the matter here involved, in the absence of a statement thereon by the trial court.

Plaintiff's argument, which is the subject of this supplement, is to the effect that defendant is estopped, or bound by tacit admission, from asserting title to the gore (that portion of the island north of the X-Y line) in consequence of the facts now to be stated. It will be remembered that title to the gore was conveyed to defendant's predecessor, Consumers Coal and Ice Company, by deed of Bernard Brady and wife dated July 29, 1910. There is no attempt in the case to qualify in any way the absolute conveyance of the gore area by the deed as such. The fact of this conveyance is made plain not only by the text of the deed itself, but by the deed as read in conjunction with the Scherzer testimony and the map (D-3) that Scherzer prepared. The other deed involved in plaintiff's argument is that of September 3, 1915 by Daniel Callaghan and wife, also to the said Consumers. The latter deed conveys the already mentioned 10-foot strip along the island perimeter. The question that plaintiff asks *arguendo* is why the Consumers Coal and Ice Company would purchase (by the 1915 deed) that portion of the 10-foot strip that lies within the gore if title to the entire gore area had been conveyed to Consumers by the 1910 deed? And answering its own question, plaintiff declares that Consumers' 1915 purchase is a tacit admission by it as grantee that the 1910 deed did not convey valid title.

Even assuming that no legitimate explanation presents itself for Consumers' acquisition of the 1915 deed, and that there is nothing to rationalize the transaction beyond the documents themselves, the situation is still devoid, so far as I can find, of any fact or circumstance to establish either estoppel or admission. The deeds speak for themselves, and though the later one may reveal Consumers' purchase thereby of what, in part, it already owned, that is all that could be said of the documents and no more. But the proofs do convey the strongest explicating probabilities against the theory advanced.

First, let us examine the 1915 deed. Our immediate concern is with the language that describes the first lot

conveyed thereby. It is clear that the third course of the first lot runs northward across that part of the lake lying south of the island and terminates on the south shore of the island. The fourth course purportedly conveys the 10-foot strip, *viz.*: "*  *  * thence (4) on a line distant ten feet inland from the high water mark of said lake, following the contour of said lake to a point in property formerly owned by P. George Callahan and now owned by the Consumers Coal & Ice Company, said point being distant ten feet inland from the high water mark of said lake  *  *  *." Scherzer testified that the terminal point of the latter course (*i. e.*, of the strip) is on the northeast corner of the island, the point which he identifies on the map in evidence with a capital P and a "crowfoot." It cannot be told with certainty whether the quoted (4) course runs clockwise around the perimeter or counter-clockwise. And it should be observed that the 1915 deed recites: "*  *  * the said property hereby conveyed being more particularly shown on a map hereby attached and made part hereof  *  *  *." One thing established with certainty is that the fourth course begins at a rock on the south shore of the island, the significance of which fact is that from it we must conclude that much of the 10-foot strip conveyed by the 1915 deed and described in the fourth course was not land already owned by Consumers, that it was not conveyed by the deed of 1910. The circumstances generally and the indicia of the proof establish the strong probability that any purchase of land already owned was merely incidental and not essential to the projected transaction.

The likelihood is that the fourth course does run clockwise around the island, beginning at the rock already mentioned on the south shore and proceeding thence to the terminal point indicated by Scherzer. If this be so, the course would run for a part of its length along the inlet on the easterly part of the north shore. A portion of this inlet appears to be south of the X-Y line (southerly boundary of the gore), from which it follows, as stated, that that segment of the strip would be property newly acquired by the 1915 deed.

As previously observed, Consumers Coal & Ice Company owned vast acreage on Lake Hopatcong, some 2,750 acres in all. (The whole gore contains only about a single acre.) And Consumers' real purpose in acquiring the strip was to supply an adjunct facility for the harvesting of ice on the lake, as already explained. It may well be that part of the strip acquired by the 1915 deed had previously been acquired by the 1910 deed. But the inference is unavoidable, under all the circumstances, that it was such a relatively small area that it was cheaper to include it in the latter deed than to defray the expense of the necessary survey. This is so obvious a consideration that we have no right to assume that it did not occur to the parties themselves.

An absolute prerequisite of the theory of plaintiff's argument is a basis of far greater certainty in the location of the fourth course in the 1915 deed than the deed affords. As already indicated, the deed requires that the map attached thereto be made "part hereof." The court has examined the map and finds it not only inaccurate but in some respects incomprehensible. Looked at without the map, the fourth course, considered in conjunction with the fifth and sixth courses, leaves the court in doubt as to the proper location of any one of them.

At all events, whether we consider plaintiff's point as presenting an argument for estoppel in any of its forms, or for a tacit admission, it is clear that the situation contains none of the elements necessary to support the contention. I find it to be entirely without merit.