50 N.J. Super. 386 (1958)
142 A.2d 667
WILOMAY HOLDING COMPANY, A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
GRACE McCOY, JOHN KESSERY, BURT SCHMIDLIN, JOHN CAPELLI, HENRY BUESING, JUSTUS BUESING, WILLIAM SCHICK, AND CALLAGHAN ISLAND LAND COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 17, 1958.
Decided June 4, 1958.
*387 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Isadore Glauberman argued the cause for appellants and cross-respondents (Mr. Edward A. Smarak, attorney; Mr. Warren Brody, on the brief).
*388 Mr. Alten W. Read argued the cause for respondents and cross-appellants (Messrs. Schenck, Smith and King, attorneys; Mr. Stephen B. Wiley, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from so much of a judgment of the Chancery Division as denies it an easement and injunctive relief over a 10-foot strip of land along the shore of an island-like peninsula known as Callaghan's Island, as that strip lies north of a certain X-Y line on a map in evidence. Defendants cross-appeal from that aspect of the judgment directing the removal of two certain bungalows and restraining defendants from building or moving any bungalows on or beyond the 10-foot strip as it lies south of the X-Y line.
Callaghan's Island, about 22 acres in size, juts out into Lake Hopatcong in a westerly direction from the mainland. Defendant corporation holds title to a strip of land on the peninsula; the individual defendants are some of its stockholders. Plaintiff holds title to another, very much larger, tract on the peninsula.
In 1915 Daniel Callaghan and his wife deeded two tracts of land at Lake Hopatcong to Consumers Coal and Ice Company. The second tract is not involved in this case. The first tract consisted almost entirely of submerged lands lying off the north, west and southwest shores of the peninsula in question. However, by virtue of its fourth course, this tract included a 10-foot-wide strip of land along what in 1915 was the north, west and southwest perimeter of the peninsula. This strip was included to provide Consumers with a place upon which it could heap snow removed incident to its harvesting of lake ice. This fourth course reads as follows:
"* * * thence (4) on a line distant ten feet inland from the high water mark of said lake, following the contour of said lake to a point in property formerly owned by P. George Callaghan and now owned by the Consumers Coal and Ice Company, said point being distant ten feet inland from the high water mark of said lake; * * *"
*389 Because some of the submerged lands adjacent to the 10-foot strip in 1915 have since been reclaimed by filling, the perimeter of the peninsula is not now contiguous at all points with the original strip.
The X-Y line to which we have referred is a straight line running southwesterly from a point near the northeast corner of the peninsula to its intersection with the northerly part of the west shore. This line marks the northern boundary of the land held by the Callaghans at the time of their grant to Consumers Coal and Ice Company in 1915. It was established in Wilomay Holding Co. v. Peninsula Land Co., 33 N.J. Super. 412 (Ch. Div. 1954), supplementary opinion, 34 N.J. Super. 121 (Ch. Div. 1955), affirmed 36 N.J. Super. 440 (App. Div. 1955), certification denied 19 N.J. 618 (1955), that the Callaghans had no title in 1915, and indeed never had title, to that part of the peninsula lying north of the X-Y line. On the contrary, the court there found that the land north of the line, sometimes called the "gore," was held by Consumers at the time of the purported grant from the Callaghans in 1915. Consumers had obtained title from one Brady and his wife five years earlier, in 1910. See Wilomay Holding Co. v. Peninsula Land Co., above, 33 N.J. Super., at pages 413 et seq. James N. Wright, the expert witness for the Wilomay defendant, testified for defendants in the present case and iterated that the Callaghans did not own north of the X-Y line at the time of their grant in 1915. The trial court found as a fact that this was so.
In their 1915 deed to Consumers the Callaghans reserved a right of passage over the 10-foot strip between their remaining uplands and the waters of the lake. The reservation reads as follows:
"Reserving and Excepting however, to the party of the first part, in common with the party of the second part, its successors and assigns, the full, free and uninterrupted right, liberty and privilege of passing and repassing to and from the remaining uplands of the party of the first part and the waters of said lake over and across the strip of land ten feet wide along the fourth line of the first tract hereof."
*390 In 1939 Consumers conveyed to defendant Callaghan Island Land Company the 10-foot strip, delineated with reference to the description contained in the 1915 deed, together with certain adjoining submerged lands. This grant was made subject to the easement created in the 1915 deed, in the following language:
"* * * Subject to the reservation contained in the deed from Daniel Callaghan and Rose A. Callaghan, his wife, to Consumers Coal and Ice Company, which reserves and excepts to the said Daniel Callaghan and Rose A. Callaghan, his wife, in common with the said Consumers Coal and Ice Company, its successors and assigns, the full, free and uninterrupted right, liberty and privilege of passing and re-passing to and from the remaining uplands of the said Daniel Callaghan and Rose A. Callaghan, and the waters of said lake over and across the strip of land ten (10) feet wide along the fourth (4th) line of the first tract mentioned in the deed from Daniel Callaghan and Rose A. Callaghan, his wife, to Consumers Coal and Ice Company, * * *"
By deed from the Callaghan heirs in 1951, plaintiff became the owner of the uplands retained by the Callaghans in 1915, and the beneficiary of such easement as was reserved at that time. The deed into plaintiff refers to the 1915 deed and grants it
"* * * such rights, if any, as the party of the first part may have for themselves, their heirs, executors, administrators and assigns, to pass and repass across lands described in the last mentioned deed, which lands in part abut those hereinabove described."
In December 1955 the individual defendants began to place their bungalows on parts of the 10-foot strip. Plaintiff thereupon filed a complaint for a declaratory judgment and injunctive relief, claiming that the bungalows constituted an obstruction of its easement. An order to show cause with restraints issued, and these restraints were continued by way of temporary injunction. Defendants' answer denied that the bungalows constituted an obstruction of plaintiff's easement, claimed that the easement had not run with the land, and asserted an estoppel by reason of the alleged activities of plaintiff's president. By way of counterclaim they contended *391 that the reservation which created plaintiff's easement also created as right in their favor to pass and repass over plaintiff's uplands. These issues were embodied in the pretrial order.
At the close of the trial there was, for a moment, some question as to whether defendants had properly challenged plaintiff's claim of easement in the 10-foot strip in front of the gore north of the X-Y line. Although plaintiff contended that the easement was not challenged in the pleadings or pretrial order, counsel waived any objection plaintiff might have since defendants had made it entirely clear they were making such a challenge.
In a letter opinion the trial court found that the Callaghan grantors did not in 1915 own that portion of the peninsula lying north of the X-Y line, and in answer to the self-posed question as to why in their deed to Consumers they included that part of the strip lying north of the line when Consumers already owned it, pointed to the disposition which Judge Drewen had made of that question in his supplemental opinion in the Wilomay case, above, 34 N.J. Super. 121. The court therefore held that the easement purportedly reserved in the 1915 Callaghan-Consumers deed was a nullity with respect to all those parts of the 10-foot strip lying north of the X-Y line; that the rule is "that present ownership of the right reserved is a condition precedent to a valid reservation," and "an exception must be part of the thing granted and not of some other thing"; further, "viewing the matter in its practical aspect it is obvious that it was the intention of the parties in that deed to reserve an easement over the strip for passage between the lake and the remaining uplands of the grantors which were contiguous to the strip." With respect to those portions of the strip lying south of the X-Y line the trial court declared  and defendants presently concede  that the Callaghans validly reserved an easement in 1915 and the benefit of this easement now enures to plaintiff.
Plaintiff had alleged in its complaint that the bungalows of four of the individual defendants obstructed its easement. *392 The trial court found that two of them, belonging to Schmidlin and Capelli, were located along the 10-foot strip where it runs north of the X-Y line, and therefore did not infringe plaintiff's easement, but the other two, belonging to Kessery and McCoy, did.
The court entered judgment: (1) enjoining defendants from moving or building any bungalows on or beyond the 10-foot strip as it lies south of the X-Y line; (2) enjoining them from in any way obstructing plaintiff from the full, free and uninterrupted right of passing and repassing to and from its remaining uplands and the waters of Lake Hopatcong, over and across the strip as it lies south of the line; (3) should defendants artificially change the shore line beyond its natural contours by adding fill, or by other means, so as to extend the land area into the lake beyond the 10-foot strip as it lies south of the X-Y line, then any such extension was to be subject to the restraints imposed upon defendants; (4) the relief granted plaintiff under (1), (2) and (3) was denied as to its use of the strip as it lies north of the X-Y line; (5) defendants Kessery and McCoy were to remove their bungalows from their present locations where they constitute an obstruction of plaintiff's easement, and finally, (6) defendant Callaghan Island Land Company had no right of passage over plaintiff's uplands.
Plaintiff appeals from the provision numbered (4), and defendants cross-appeal from the provisions numbered (1), (2), (3) and (5). The sixth provision is not appealed.

I.
There can be no question at this late date that in 1915 plaintiff's predecessors in title, Daniel Callaghan and his wife, did not have title to that portion of the peninsula north of the X-Y line. Wilomay Holding Co. v. Peninsula Land Co., above.
Plaintiff's argument proceeds on the premise that even if the Callaghans did not have title to the entire perimeter of the peninsula in 1915 when they granted the 10-foot strip *393 to Consumers, predecessor in title to defendant Callaghan Island Land Company, nevertheless, by virtue of the reservation contained in that deed, they established an easement of passage in their favor across the strip north of the X-Y line. Plaintiff claims that the easement so created is valid regardless of whether it was the grantor or the grantee who had prior ownership of the land over which it was to run. Since Consumers, the grantee under the 1915 deed, owned the 10-foot strip, that was sufficient to support the easement reserved by the Callaghan grantors. Historically, so runs plaintiff's argument, a reservation in a deed has been considered a grant of the right reserved, from the grantee to the grantor, citing 2 American Law of Property, §§ 8.24-8.28, pp. 246-253 (1952). A deed containing a reservation becomes the deed of the grantee upon his acceptance, and the reservation as it is described in the deed is considered a grant by the grantee to the grantor, reliance here being placed upon the dissenting opinion of Justice Depue in Cooper v. Louanstein, 37 N.J. Eq. 284, 306 (E. & A. 1883). Another approach projected by plaintiff in support of its contention is that found in the concurring opinion of Chief Justice Beasley in the Cooper case (at page 303)  that although a reservation should not literally be considered a grant by the grantee, it is evidence of a concurrent parol agreement between the grantee and the grantor which, if consistent with the attendant circumstances and performed at least in part, is enforceable.
The New Jersey cases, insofar as they have spoken upon the subject, do not validate plaintiff's argument that it is "settled law" (sic) in this State that a grantor may, by a reservation contained in his deed of lands to a grantee, obtain an easement in other lands of the grantee not comprised in the grant. The majority opinion in the Cooper case (37 N.J. Eq. at page 300) and, indeed, the concurring opinion of Chief Justice Beasley (at page 303) are to the contrary. Plaintiff claims that the views expressed in Justice Depue's dissenting opinion in Cooper have been adopted and carried forward in the later cases of Hagerty v. Lee, 54 N.J.L. 580 *394 (E. & A. 1892); United States Pipe Line Co. v. Delaware, L. & W.R. Co., 62 N.J.L. 254 (E. & A. 1898), and Booraem v. North Hudson County Ry. Co., 40 N.J. Eq. 557 (E. & A. 1885). We do not find this to be so. In Hagerty (54 N.J.L. at page 584), the court expressly stated that "A covenant or stipulation inserted in a deed poll binds the grantee, his heirs and assigns, where such stipulation relates to the premises conveyed. The easement in such case may be acquired by a clause of reservation," citing the Cooper case. (Italics ours) In United States Pipe Line the reservation was out of the premises conveyed, and such was also the case in Booraem. Nor does the text in 2 American Law of Real Property, §§ 8.24-8.28, above, cited by plaintiff, stand for the proposition that one can obtain rights in lands owned by the grantee by reserving those rights upon conveyance of other lands.
It is generally held that a reservation is the creation in behalf of the grantor of a new right issuing out of the thing granted  something which did not exist as an independent right before the grant. See 1 Thompson on Real Property (rev. ed. 1939), § 360, p. 581; 17A Am. Jur., Easements, § 31, p. 641 (1957); 16 Am. Jur., Deeds, § 298, p. 607 (1938); 26 C.J.S., Deeds, § 139a, pp. 1003, 1004 (1956). As indicative of the New Jersey law on the point raised by plaintiff, see Chidester v. City of Newark, 31 F. Supp. 892, 894 (D.C.N.J. 1940), reversed on procedural grounds, 117 F.2d 981 (3 Cir. 1941); same result reached on remand 58 F. Supp. 787 (D.C.N.J. 1945), affirmed 162 F.2d 598 (3 Cir. 1947). Consult, generally, Annotation, "Effect of provision in deed purporting to except or reserve a right in the grantor in respect of land or interest which he does not own," 136 A.L.R. 644 (1942).
Plaintiff argues that one should not mechanically conclude that absence of title in the grantor at the time of the conveyance automatically precludes the effectiveness of a reservation of an easement in his favor over other property of the grantee, and that regardless of the technical effect of words in the conveyance, the court should enforce what appears to *395 have been the intention of the parties. This would seem to be the spirit which pervades Chief Justice Beasley's concurring opinion in Cooper v. Louanstein, above. And see 17A Am. Jur., Easements, § 30, p. 640 (1957); Annotation, 142 A.L.R. 467, 469 (1943).
The reservation contained in the 1915 deed from the Callaghans to Consumers expressly stated that the purpose of the easement was to give the grantor, in common with the grantee, "the full, free and uninterrupted right, liberty and privilege of passing and repassing to and from the remaining uplands of the party of the first part [the Callaghans] and the waters of said lake over and across" the 10-foot strip. (Italics ours) At the time the deed was delivered and recorded the "remaining uplands" of the Callaghans extended no farther north than the X-Y line, and from the map in evidence the only place where these uplands adjoined the 10-foot strip was where the strip ran south of the line. It is clear that at any point where the Callaghans did not have title to the land immediately adjoining the strip they would not have the right to cross the strip to get to the lake, because they would have to cross lands belonging to others before they could get to the strip.
It may be argued the Callaghans at that time were unaware of the fact that they did not own north of the X-Y line. From the description contained in the fourth course, where the line runs "to a point in property formerly owned by P. George Callaghan and now owned by Consumers Coal and Ice Company," it would appear that the Callaghans recognized where their holdings ended  immediately south of the X-Y line. We find no evidence whatever that they made any claim in 1915 to the lands north of the line; the record in the Wilomay case as well as here negatives that fact. Certainly Consumers knew that it owned north of the line; in fact, both parties appeared to be familiar with the circumstances existing at the time of the 1915 deed, as indicated by the court in the first Wilomay case, 33 N.J. Super., at page 416. But whether or not the Callaghans knew they did not own north of the line would make no *396 difference, for the purpose of the reservation could not be effectuated except in favor of one who owned land immediately and contiguous to the strip. The words of the reservation bespeak direct passage "to and from the remaining uplands." In the absence of a right of passage over the lands lying intermediate of the X-Y line and the 10-foot strip, one can agree with plaintiff's contention only if one were willing to assume that the Callaghans intended to make a habit of trespassing upon the lands of Consumers in passing to and from their remaining uplands and the 10-foot strip. We will not indulge in such an assumption.
We conclude, as did the trial court, that plaintiff does not have an easement of passage over the strip as it lies north of the X-Y line.

II.
In their cross-appeal defendants contend that the restraint against the moving or building of bungalows, as well as against any obstructions, anywhere on or beyond the 10-foot strip as it lies south of the X-Y line, was too broad. They claim that reference to the 10-foot strip in the deed reservation is merely descriptive of the property over which plaintiff may pass, but the width of the right-of-way is limited to that which is reasonably necessary to permit of passing and repassing over the strip. In short, plaintiff is not entitled to have unobstructed passage over the entire length of the 10-foot strip south of the line, citing Hyland v. Fonda, 44 N.J. Super. 180 (App. Div. 1957), in support. But that case dealt with an entirely different situation; the easement which the owner of the back lot had to the street over the front lot was only in terms of a "right of ingress and egress for roadway purposes along a strip 25 feet in width." We held that the entire 25-foot strip was not reasonably necessary for such purposes, nor did the words "along a strip" require a different construction.
There is no ambiguity whatever about the reservation of the easement of passage in this case. The easement is not in *397 terms of ingress and egress; rather, the language of the reservation is "the full, free and uninterrupted right, liberty and privilege of passing and re-passing to and from the remaining uplands of the party of the first part [the Callaghans] and the waters of said lake over and across the strip of land ten feet wide." It is clear from this language that the intention of the parties was to insure to the owner of the uplands the right of full access to the waters of Lake Hopatcong. The reservation does not permit anything in the nature of a permanent or continuous physical obstruction of any part of the strip south of the X-Y line by or with permission of the owner of the servient tenement (presently the Callaghan Island Land Company), which would bar the uplands' owner (plaintiff) from access to the lake at any point along the shore.
The expression of the parties in creating the reserved easement in the 1915 deed is lacking in neither completeness nor quality. The right reserved was broad and unlimited; there is nothing in the proofs which suggests that the parties to the 1915 deed intended in any way to restrict the right of passage reserved. In such circumstances the language of the creating conveyance exercises primary control with respect to the scope of the easement created. 2 American Law of Property, §§ 8.64-8.66, pp. 276-279 (1952); 1 Thompson on Real Property (rev. ed. 1939), § 368, p. 595, and 6 Ibid., § 3486, p. 720; 3 Powell on Real Property, § 415, p. 457 (1952); 17A Am. Jur., Easements, §§ 113, 114, pp. 720, 721 (1957).
Defendants' argument that the language of the reservation should be construed to mean that the 10-foot strip south of the X-Y line can be obstructed by bungalows as long as enough of the strip is left open so that the upland owners can get to the lake shore, is not persuasive. Pursued to its logical extreme, this argument would permit a continuing number of such obstructions, and it would be difficult to draw the line as to when the total number of bungalows on the strip would have become so numerous that the remaining unobstructed portion could no longer be regarded as furnishing *398 reasonable access to the lake. When such a degree of obstruction is reached, how could the holders of the easement have an effective remedy? Which obstructions would be subject to removal?
In our view, there is only one practical way to construe the language of the reservation  unambiguous and unrestricted as it is  so as to effect its intent, and that is to prohibit anything in the nature of a permanent or continuous physical obstruction on any part of the 10-foot strip south of the X-Y line. In Maier v. Mayor, etc., Mountain Lakes, 33 N.J. Super. 309 (App. Div. 1954), the easement was created by a reservation in a deed which read, in part, as follows:
"* * * subject to the right of the present owners of land fronting upon said lakes and waterway, their heirs, successors and assigns, to free access to and use of the said Lakes and waterways."
The defendant owned a strip of land between plaintiff's property and the lake, and plaintiff complained of the fence it had erected on the strip. Defendant claimed that the fence had gateways allowing plaintiff reasonable access to the lake. We held that in its context "free access" meant "unobstructed, open, clear, unhampered, unrestricted and unimpeded access," and ordered defendant to remove the entire barrier. And see Arnold v. Boulay, 147 Me. 116, 83 A.2d 574 (Sup. Jud. Ct. 1951); 17A Am. Jur., Easements, § 121, p. 730 (1957).
Our examination of the facts relating to the present location of the McCoy and Kessery bungalows establishes that, as presently situated, they obstruct plaintiff's easement across the 10-foot strip south of the X-Y line.
What we have said as to plaintiff's right to an unobstructed exercise of its easement across the strip south of the line applies to any underwater lands that may have been reclaimed beyond the strip. In fact, defendants' position is that plaintiff's right of passage should not be so unreasonably circumscribed as to exclude this reclaimed land from the reach of the claimed easement; they argue, merely, *399 that as in the case of the 10-foot strip itself, plaintiff's right of passage over these reclaimed lands should be only such as is reasonably necessary. That argument must fall for the same reason expressed in our discussion of the right to unobstructed passage across the strip south of the X-Y line.
The judgment is affirmed.